Marlow **BRIDGES**, Petitioner,

v.

Jose **VASQUEZ**, Respondent.

No. 3:01CV150–RH.

United States District Court,
N.D. Florida,
Pensacola Division.

July 6, 2001.

Marlow Bridges, Eglin Air Force Base, FL, pro se.

### ORDER DENYING PETITION UNDER 28 U.S.C. § 2241

HINKLE, District Judge.

This action presents the recurring issue of whether a federal defendant may invoke 28 U.S.C. § 2241 to challenge his or her conviction or sentence as violating the rule of constitutional law adopted in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The issue is

important because the usual vehicle for presenting a post-conviction challenge to a federal conviction or sentence, 28 U.S.C. § 2255, is unavailable at this time for the presentation of the *Apprendi* issue by a federal defendant who has already been denied relief under § 2255 on other grounds. Relief under § 2255 apparently will, however, become available to such a defendant in due course, if indeed *Apprendi* is retroactively applicable to cases on collateral review and provides a substantive basis for relief in the defendant's case. I hold that an *Apprendi* claim may *not* be presented under § 2241 when, as here, § 2255 will in due course provide adequate and effective relief for any well-founded *Apprendi* claim.

## I

*Apprendi* held, as a matter of constitutional law, that a defendant has the right to have any fact that increases the statutory maximum sentence (other than prior conviction of crime) determined by a jury on proof beyond a reasonable doubt.[1] This was a change from the law of this and every other circuit that had addressed the issue.[2] The holding is particularly important in many federal drug cases, because the statutory maximum sentence in many instances is dependent on the type and quantity of drugs involved in the offense.[3]

## II

When *Apprendi* was decided, there were many federal defendants—including petitioner in the case at bar-serving sentences that had been imposed in proceedings that did not anticipate, and thus did not attempt to comply with, the holding in *Apprendi*. Such defendants fell into three categories.

First, some defendants still had direct appeals pending (or still had time to file a direct appeal) and thus were able to raise the *Apprendi* issue on direct appeal. *See, e.g., United States v. Swatzie,* 228 F.3d 1278 (11th Cir.2000).

Second, other defendants either had not yet filed any § 2255 motion, or their first § 2255 motion was still pending, thus affording those defendants the opportunity to assert in their first § 2255 proceeding that *Apprendi* should be applied retroactively in cases on collateral review and that, when so applied, *Apprendi* afforded them a right to relief. *See, e.g., United States v. Moore,* N.D. Fla. No. 4:00cv465–RH (unpublished order of March 3, 2001).

Third, still other defendants already had lost a first § 2255 motion raising other

---

1. In *Apprendi,* the Supreme Court summarized its holding as follows:

   Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case [*Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) ]: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal de-

   fendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."
   *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348.

2. *See, e.g., United States v. Hester,* 199 F.3d 1287, 1292 (11th Cir.2000); *United States v. Cross,* 916 F.2d 622, 623 (11th Cir.1990).

3. *See, e.g.,* 21 U.S.C. § 841(b) (establishing maximum penalties for controlled substance offense under 21 U.S.C. § 841(a) that vary depending on type and quantity of controlled substance involved in offense).

claims. *See, e.g., In re Joshua,* 224 F.3d 1281, 1283 (11th Cir.2000). By its terms, § 2255 was not, and is not at this time, available to those defendants as an avenue for raising the *Apprendi* issue, because a "second or successive motion" under § 2255 may be filed only if "a panel of the appropriate court of appeals" certifies that the motion is based on either "newly discovered evidence" establishing innocence or "a new rule of constitutional law, *made retroactive to cases on collateral review by the Supreme Court,* that was previously unavailable." 28 U.S.C. § 2255 (emphasis added). *Apprendi* claims generally are not based on newly discovered evidence, and, although *Apprendi* sets forth a new rule of constitutional law, that new rule has not, to date, been made retroactive "by the Supreme Court" to cases on collateral review.[4]

### III

Petitioner falls into the third category. He was convicted by a jury and sentenced, prior to *Apprendi,* to 264 months in custody, based on a determination of drug quantity by the sentencing judge (applying the preponderance of the evidence standard), not by a jury (based on proof beyond a reasonable doubt). He filed a motion for relief from his conviction or sentence under 28 U.S.C. § 2255 based on grounds other than *Apprendi.* Relief was denied.

In order to avoid the limitation on "second or successive" § 2255 motions, petitioner now expressly seeks relief only under the federal habeas corpus statute, 28

U.S.C. § 2241, *not* under § 2255. Petitioner makes clear he does not rely on § 2255 and does not want his § 2241 petition treated as, or deemed to be, a § 2255 motion. The issue of the availability of relief under § 2241 is thus squarely presented.

### IV

Congress has addressed the issue of whether a federal defendant must proceed under § 2255, or may instead proceed under § 2241, as follows:

> An application for a writ of habeas corpus [that is, a § 2241 petition] in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section [that is, under § 2255], shall not be entertained if it appears that the applicant has failed to apply for relief, by motion [under § 2255], to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

28 U.S.C. § 2255 (emphasis added). The emphasized language is sometimes referred to as the "savings clause."

The issue in the case at bar is whether, for a defendant who has lost an initial § 2255 motion on other grounds, the remedy by motion under § 2255 is "inadequate or ineffective" to raise the *Apprendi* claim, thus allowing resort to § 2241. In order to resolve this issue, this opinion addresses (a) the initial enactment of § 2255 in 1948,

---

4. *See Tyler v. Cain,* ─── U.S. ───, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (holding that a new rule of constitutional law has been made applicable to cases on collateral review "by the Supreme Court," within the meaning of § 2255, only if the Supreme Court has decid-

ed that the new rule of constitutional law at issue is retroactively applicable to cases on collateral review); *In re Joshua,* 224 F.3d 1281, 1283 (11th Cir.2000) (holding that *Apprendi* claim could not be raised in second or successive § 2255 motion).

(b) the 1996 amendment adopting the statutory prerequisites to second or successive § 2255 motions, (c) the § 2255 savings clause and its interpretation by the Eleventh Circuit, and finally (d) in light of this background, the availability of relief under § 2241 for petitioner's *Apprendi* claim.

## A

Historically, post-conviction challenges to federal convictions were properly brought by petition for writ of habeas corpus, the remedy now codified at 28 U.S.C. § 2241. Such petitions appropriately were brought in the district of incarceration, not the district of conviction. The result was that records (and witnesses, if testimony was needed) had to be transported to inconvenient-sometimes far distant—districts, and challenges were adjudicated by judges unfamiliar with the original case or with the local procedures under which it was tried. Districts with large penal institutions were burdened with a disproportionate share of cases.

Congress changed this approach dramatically with the adoption in 1948 of 28 U.S.C. § 2255. *See United States v. Hayman,* 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952). The new statute required post-conviction challenges to federal convictions to be brought by motion in the district of conviction. The result was that the record was readily available to the presiding judge, who was familiar with applicable local procedures and usually with the case itself. If testimony was required, witnesses were usually close at hand. The new procedure was far better in every respect, with the sole exception that defendants would have to be transported back to the district of conviction in those comparatively rare instances when their presence was necessary for adjudication of the motion.

The wisdom of this approach is well illustrated in *Apprendi* cases. If an *Apprendi* challenge is brought in the district of conviction, the district judge · will be familiar with the underlying case and local procedures, will be able easily and efficiently to determine the course of proceedings and whether any *Apprendi* error occurred and was preserved, and will be able to determine the often dispositive issue of whether any *Apprendi* error was harmless.[5] If the district judge grants relief (as presumably will occur in a significant number of cases), he or she will be able to conduct a new trial or resentencing as may be appropriate without unnecessary delay or duplication of effort. The district court presumably will be able to handle all of

---

**5.** Harmless error analysis by the judge who actually presided over any trial and sentencing will be much more efficient, and usually more reliable, than the same analysis by a judge unfamiliar with the case. Familiarity with local procedures also is important in the *Apprendi* context, because prior to *Apprendi,* indictments were phrased, pleas were taken, and sentencings were conducted in different ways in different districts, with significant implications for *Apprendi* issues. Thus, for example, in this district, indictments routinely cited the charged subsection of 21 U.S.C. § 841(b)(1), which gave notice of the government's position on drug quantity, but defendants ordinarily were not called upon at plea proceedings to plead to or acknowledge the applicability of the cited subsection; prior to *Apprendi,* this was an issue for sentencing. Nonetheless, Eleventh Circuit panels unfamiliar with local procedures have sometimes held that a plea to an indictment citing the charged subsection of § 841(b)(1) constituted an admission of the defendant's involvement with the quantity required by that subsection. Regardless of whether that is right or wrong, analysis of the issue would be aided by knowledge of the local procedure, which is available from the record only with some effort (and attendant inefficiency).

this prior to any appeal.[6]

If *Apprendi* challenges are brought in the district of incarceration, in contrast, enormous inefficiency will be introduced, and reliability may be sacrificed. A new district judge, unfamiliar with the specific case and with the local practice under which it was adjudicated, will have to start from scratch. If relief is granted, the government presumably will be entitled to an immediate appeal, in the circuit of incarceration, because the order granting relief will constitute the final disposition of the petition. Any new trial or resentencing will occur in the district of conviction, however, perhaps while an appeal is pending in the circuit of incarceration or perhaps after any appeal is concluded. Back in the district of conviction, the district judge (who presided over the underlying case) may follow the decision of the district judge who granted the habeas petition (even though district judges are not accustomed to having their convictions or sentences reviewed by other district judges, and even though the habeas judge will have been far less familiar with the underlying case). In any event, after the new trial or resentencing, either side again will have an opportunity to appeal, this time in the circuit of conviction. The very real possibility of circuit conflicts over such matters as the availability of relief under § 2241 or other *Apprendi* procedural or substantive issues makes this approach problematic, to say the least.

*Apprendi* will produce enough work if addressed for each defendant by one district judge (who already is familiar with the matter from having presided over the underlying case) and one court of appeals. Involving different district judges, and courts of appeals from different circuits, in what is essentially the same case, makes no sense.[7]

■ In sum, Congress determined, for good reason, that post-conviction challenges ordinarily should be brought in the district of conviction, not the district of incarceration. That was the purpose for the original adoption of 28 U.S.C. § 2255 in 1948. That purpose has never been challenged and counsels strongly in favor of the presentation of *Apprendi* challenges only under § 2255.[8]

---

6. The only downside of requiring post-conviction challenges to be brought in the district of conviction—the possibility that the defendant will have to be transported there—will rarely if ever be a factor in *Apprendi* cases. Most such cases will be denied on the written record, with no need for the defendant's presence, or granted, in which event the defendant will have to be returned to the district of conviction for a new trial or resentencing anyway.

7. In the case at bar, it happens that the district of conviction (the Middle District of Florida) and district of incarceration (the Northern District of Florida) are in the same circuit. That often will not be the case; federal prisoners often are designated to institutions outside their circuit of conviction.

8. This is not to say that, if *Apprendi* issues must be adjudicated under § 2241, this would necessarily have to occur in the district of incarceration. Although it has been thought traditionally that § 2241 proceedings must be brought in the district of incarceration, *see, e.g., Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), at least some flexibility has more recently been recognized, *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 499–500, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), and at least some district courts have held that, in appropriate circumstances, § 2241 petitions may be transferred to the district of conviction. *See Keyes v. Henry*, N.D. Fla. No. 5:99cv298–RH (unpublished order of Sept. 18, 2000); *Conley v. Crabtree*, 14 F.Supp.2d 1203 (D.Or.1998). The Fifth Circuit has held to the contrary, *see Lee v. Wetzel*, 244 F.3d 370 (5th Cir.2001), and the Third

## B

Congress amended § 2255 in 1996 to restrict, but not foreclose, second or successive motions. Congress determined that defendants should have a right to a direct appeal and a first § 2255 motion, but then should be able to present a second or successive motion only if, as determined by the court of appeals, the motion was based on

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255.

As this language makes clear, issues such as those raised by *Apprendi* were not overlooked in the congressional approach. To the contrary, Congress specifically recognized that there would be decisions (like *Apprendi* ) adopting "a new rule of constitutional law"; *Apprendi* presents a situation precisely of the type Congress anticipated. Congress determined that a new rule of this type should be available in a second or successive petition, but only if made retroactive to cases on collateral review "by the Supreme Court."

■ Congress's apparent intent, in adopting this restriction, was not to foreclose relief based on new rules of constitutional law that appropriately should be applied retroactively; to the contrary, Congress expressly authorized such relief.

Congress's intent was, instead, to assure that such relief was not improperly granted based on rules of constitutional law that properly should *not* be applied retroactively, and to delay the granting of relief until the Supreme Court definitively resolved the issue of retroactivity. The reason for this approach is not hard to recognize: whether a new rule of constitutional law should be applied retroactively to cases on collateral review is not always clear, and it thus makes sense to insist on a definitive resolution of that issue before either (1) undertaking the enormous task of adjudicating claims based on the new rule or (2) proceeding to release, retry or resentence defendants to whom the new rule might or might not ultimately be held to apply.

Again, *Apprendi* well illustrates the reason for the rule. Whether *Apprendi* ultimately will be held retroactively applicable to cases on collateral review is unclear. A definitive ruling on retroactivity by the Supreme Court will assure that enormous resources are not *unnecessarily* devoted to adjudication of *Apprendi* claims on second or successive motions.

To be sure, whether second or successive motions should be allowed to go forward immediately after the Supreme Court's adoption of a new rule of constitutional law, or instead should have to await a Supreme Court ruling on retroactivity, is an issue that reasonably could be debated; sound reasons support either view. What cannot reasonably be debated, however, is how Congress resolved the issue. In the 1996 amendments to § 2255, Congress decided that a new rule of constitutional law, such as announced in *Apprendi,* should not be pursued by a second or successive motion, unless and until the Supreme Court determines the new rule is retroactively available on collateral review.

Circuit has expressed hesitation, *see In re* *Nwanze,* 242 F.3d 521 (3d Cir.2001).

## C

Petitioner does not, however, seek to proceed under § 2255. Instead, he invokes 28 U.S.C. § 2241. Neither in 1948 (when Congress adopted § 2255) nor in 1996 (when Congress amended § 2255 to restrict second or successive motions) did Congress explicitly make § 2255 the sole statutory vehicle for challenging a federal conviction or sentence. Instead, when it adopted § 2255 in 1948, Congress left standing a defendant's ability to challenge a federal conviction or sentence by petition for writ of habeas corpus (as codified in § 2241), if the remedy by motion under § 2255 was "inadequate or ineffective to test the legality of [the petitioner's] detention." 28 U.S.C. § 2255. This "savings clause" remains part of the statute, not having been repealed by the 1996 amendments or otherwise.

The Eleventh Circuit has addressed the history and meaning of the savings clause at length. *See Wofford v. Scott,* 177 F.3d 1236 (11th Cir.1999). No purpose would be served by repeating here the full *Wofford* analysis, but two conclusions that emerge from that case should be noted.

■ First, as recognized in *Wofford,* the "remedy by motion [under § 2255]" is *not* rendered "inadequate or ineffective" merely because the petitioner failed to raise an issue in his or her first motion and cannot meet the § 2255 procedural prerequisites to a second or successive motion. If the rule were otherwise, Congress's enactment of the procedural prerequisites would have had no effect, other than the decidedly undesirable effect of turning back the clock to a time prior to 1948, by requiring such claims to be brought under § 2241 (generally in the district of incarceration) rather than under § 2255 (in the district of

conviction). Whatever might be said about the 1996 amendments, apparently *nobody* has criticized the 1948 change from § 2241 petitions to § 2255 motions as the preferred procedural device for challenging convictions and sentences. In short, the mere fact that relief under § 2255 is procedurally barred is not alone sufficient to make § 2241 an available remedy.

■ Second, as also recognized in *Wofford,* the savings clause *does* provide an avenue for raising at least some challenges that have not been specifically foreclosed by Congress, that appropriately should be available by some method, but that are not available under § 2255, not because of any procedural default by the defendant and not because Congress specifically sought to foreclose them, but instead because the challenge was not available to the defendant earlier and Congress did not anticipate (and thus did not provide a § 2255 remedy for) the particular type of claim at issue. In the savings clause, Congress recognized that there might be unforeseen circumstances in which the § 2255 remedy might be inadequate or ineffective, and Congress left an avenue— § 2241—for dealing with those circumstances.

Guided by these principles, *Wofford* devised a three-part test for determining whether § 2241 is an available remedy for challenging a federal conviction or sentence. That test, however, must be understood in the context in which it was developed. *Wofford* involved "sentencing claims, none of which rest[ed] upon a circuit law-busting, retroactively applicable Supreme Court decision." *Wofford,* 177 F.3d at 1245. But *Wofford* was written when literally hundreds of claims were pending under *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), and the precedents *Wofford* dis-

cussed primarily involved *Bailey* claims. *Wofford* must be understood, at least in substantial part, in the context of *Bailey.*

At the relevant time, 18 U.S.C. § 924(c) provided a mandatory consecutive five-year sentence for anyone who "uses or carries" a firearm during and in relation to another federal crime. In *Bailey,* the Supreme Court interpreted the word "uses" narrowly. Defendants who had been convicted under § 924(c) based on a broader interpretation of "uses," but who had lost § 2255 motions raising other grounds, soon sought an avenue for raising *Bailey* challenges to their § 924(c) convictions.

Like *Apprendi, Bailey* constituted a departure from the prior law of this (and other) circuits; many defendants had been convicted of "using" a firearm under circumstances that, according to the Supreme Court's later decision in *Bailey,* did not constitute "using" a firearm at all. Unlike *Apprendi,* however, *Bailey* did not announce a new rule of *constitutional* law; *Bailey* was a *statutory* interpretation case. As set forth above, § 2255 allows second or successive motions based on newly discovered evidence or a new rule of constitutional law, under specific conditions. There is no such allowance in § 2255, however, for second or successive motions based a new rule of statutory construction.

As recognized in the cases from other circuits discussed in *Wofford,* any holding permanently foreclosing relief based on a new rule of statutory construction (such as adopted in *Bailey* ) would have raised a substantial issue under Article I, Section 9 of the Constitution, which prohibits suspension of the writ of habeas corpus, except in times of rebellion or invasion. The *Wofford* court apparently obviated any such constitutional issues in this circuit by holding that the § 2255 savings clause applies, and a petition under § 2241 thus may be filed,

> when: 1) that claim is based on a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; and, 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's appeal, or first § 2255 motion.

*Wofford v. Scott,* 177 F.3d 1236, 1244 (11th Cir.1999).

Whether this three-part test, in the strict phrasing set forth in *Wofford,* would apply to an *Apprendi* claim is unclear.[9] As with any judicial opinion written in advance addressing other circumstances,

---

9. The third *Wofford* criterion is clearly met; prior to *Apprendi,* circuit law squarely foreclosed any claim that drug quantity was an issue for the jury. I assume for purposes of this opinion that the first criterion is also met, that is, that *Apprendi* properly should be held retroactive. Whether the second criterion is met could be argued either way; a drug offense remains a drug offense regardless of quantity, but the Eleventh Circuit apparently has held that the statutory provisions establishing maximum sentences based on drug quantity in effect create separate offenses. *See United States v. Rogers,* 228 F.3d 1318, 1327 (11th Cir.2000). By "convicted for a nonexistent offense," the court in *Wofford* apparently meant convicted by a jury under instructions defining an offense incorrectly and thus allowing the conviction of an innocent person, or at least so *Wofford* has been construed in the district courts; otherwise the decision would not allow the pursuit of *Bailey* claims under § 2241. If this analysis of *Wofford* is correct, and if, under *Rogers,* separate drug offenses are defined by the separate sentencing categories, then a defendant who is sentenced in a higher category, based on a verdict making no finding that he or she belonged there, has perhaps been "convicted for a nonexistent offense," within the meaning of *Wofford.*

however, more attention should be paid to the reasons for and import of the *Wofford* decision, than to a fine parsing of its language. *Wofford* in effect recognized that it would be unjust to foreclose claims by defendants who might well be actually innocent of the offenses of which they had been convicted, that some such claims (*Bailey* claims are an example) were permanently unavailable under § 2255 by its terms to defendants who had lost a first § 2255 motion raising other grounds, that this situation had not been specifically foreseen or addressed by Congress, and that this was precisely the kind of situation for which the savings clause existed.

The same is not true, however, of *Apprendi* claims, because § 2255 specifically addresses the circumstances under which a second or successive § 2255 motion is available to assert a new rule of constitutional law, and does not permanently foreclose relief. In short, *Wofford* does not resolve the issue of whether § 2241 may be invoked to raise an *Apprendi* claim.[10]

### D

■ The issue thus remains whether, for a defendant who has lost a § 2255 motion raising other claims, the remedy by motion under § 2255 is "inadequate or in-

effective" to assert an *Apprendi* claim, within the meaning of the § 2255 savings clause. As a matter of statutory construction, my conclusion is that the 1996 amendments to § 2255, which specifically address the precise issue of the circumstances under which collateral relief is available to a federal defendant based on a new rule of constitutional law, accurately set forth Congress's intent on this issue, and thus trump the more general savings clause, as adopted in 1948. *See, e.g., United States v. Louwsma*, 970 F.2d 797, 799 (11th Cir. 1992) (noting general canon of statutory construction under which more specific legislative enactment ordinarily controls over conflicting provision that is more general).[11] This conclusion is strongly supported by the purpose of the 1948 enactment of § 2255, making relief available in the district of conviction rather than the district of incarceration, which has, so far as I am aware, never been criticized by anyone, and could not reasonably be criticized.

■ Indeed, the case for construing the statute in this manner would be overwhelming, but for two additional considerations. First, the savings clause was intended to make relief available in appropriate circumstances, essentially as a safety valve. Second, statutes ordinarily

---

10. So far as I am aware, no other circuits have decided this issue to date. The issue is discussed, but not resolved, in *Sustache–Rivera v. United States*, 221 F.3d 8 (1st Cir.2000).

11. The Supreme Court has said that, while repeal of an express statutory text by implication based on a later passed statute is disfavored,

> repeal by implication of a legal disposition implied by a statutory text is something else. The courts frequently find Congress to have done this—whenever, in fact, they interpret a statutory text in the light of surrounding texts that happen to have been

subsequently enacted. This classic judicial task of reconciling many laws enacted over time, and getting them to "make sense" in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.

*United States v. Fausto*, 484 U.S. 439, 453, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). The limitations on second or successive § 2255 motions adopted in 1996 "make sense" in combination with the 1948 savings clause only if the latter is not interpreted to render the former a nullity.

should be construed, when possible, to avoid substantial constitutional issues. If this were indeed a situation where relief for meritorious claims would otherwise be permanently unavailable, a strong case could be made for construing the safety valve to apply, regardless of the practical advantages of the § 2255 procedure when compared to the § 2241 procedure.

The answer, however, is that this is not a case where relief for a meritorious claim will otherwise be permanently unavailable. Or at least, there is no reason at this time to believe this will be such a case. The retroactive applicability of *Apprendi* on collateral review is an issue of enormous import. It is reasonable to anticipate that the Supreme Court will take the issue, at least after the issue has percolated sufficiently in the lower courts, probably sooner rather than later. If the Supreme Court holds *Apprendi* retroactive, then relief under § 2255 will be available for any well-founded *Apprendi* claim.

12. The lack of clear information on this provides just one minor example of the difficulty of litigating these issues in the district of incarceration (where the record of the underlying case is not readily available) rather than in the district of conviction (where the information at issue may be readily available on the judge's computer with a few keystrokes).

13. *Apprendi* does not affect application of the sentencing guidelines, *see United States v. Nealy*, 232 F.3d 825, 829 n. 3 (11th Cir.2000), or any sentence below the statutory maximum that would apply without regard to any fact not properly determined by the jury (for drug cases, this means drug type or amount). *See United States v. Gerrow*, 232 F.3d 831, 834 (11th Cir.2000). Petitioner was convicted of multiple crack cocaine offenses under 21 U.S.C. § 841(a), for which the lowest maximum sentence is 20 years. *See* 21 U.S.C. § 841(a)(1)(C). Thus even if he prevailed on his *Apprendi* claim, the remedy presumably would be to reduce his sentence to the statutory maximum of 20 years (that is, 240 months).

Neither the savings clause nor the Constitution demands that relief be available more quickly, at least where, as here, no harm will accrue to petitioner in the meantime. Although this record is unclear, it appears that petitioner was indicted in 1988, convicted in May 1989, and sentenced thereafter (presumably later in 1989) to 264 months in custody.[12] A well-founded *Apprendi* claim would reduce his sentence to no lower than 240 months,[13] apparently meaning he would be released from custody no earlier than 2004.[14] There is no reason now to believe that any well-founded *Apprendi* claim could not be resolved under § 2255 by that time.[15]

Accordingly, I hold that, as of now, the remedy by motion under § 2255 is not "inadequate or ineffective" to raise petitioner's *Apprendi* claim. His petition under § 2241 will be denied, without prejudice to the assertion of an *Apprendi* claim in a properly presented second or successive § 2255 motion, and without prejudice

14. Even assuming petitioner receives a one-year reduction for completion of substance abuse treatment and earns the maximum 15% gain time credit, he would be required to serve over 16 years on a 20-year sentence. Even assuming he was detained when indicted in 1988, his earliest release date would be in 2004.

15. No opinion is expressed on the issue of whether *Apprendi* should or should not be applied retroactively to cases on collateral review. I assume for purposes of this opinion that it should be. If not, any *Apprendi* claim by petitioner will by definition be unfounded. If the Supreme Court holds *Apprendi* should be applied retroactively to cases on collateral review, petitioner will be able to raise an *Apprendi* claim by second or successive § 2255 motion. Such a motion, filed in the district of conviction, will be susceptible to resolution much more quickly than a § 2241 petition in this district, where necessary information is not readily available, and the district judge will have to start from scratch.

to the filing of a renewed § 2241 petition if it appears at any point that a determination of the retroactivity of *Apprendi* will not be made by the United States Supreme Court in sufficient time to allow petitioner to present and obtain adjudication of a § 2255 motion prior to the time at which he would be released in the event his *Apprendi* claim were sustained on the merits.[16]

### Conclusion

For these reasons,

IT IS ORDERED:

1. The petition for writ of habeas corpus under 28 U.S.C. § 2241 is DENIED without prejudice to the assertion of a claim under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in a properly presented second or successive motion under 28 U.S.C. § 2255, and without prejudice to the filing of a renewed petition under 28 U.S.C. § 2241 if it appears at any point that a determination of the retroactivity of *Apprendi* to cases on collateral review will not be made by the United States Supreme Court in sufficient time to allow petitioner to present and obtain adjudication of a § 2255 motion prior to the time at which he would be released in the event his *Apprendi* claim were sustained on the merits.

2. The clerk shall enter judgment accordingly and shall close the file.

SO ORDERED this ___ day of July, 2001.

---

16. No opinion is expressed on the issue of whether § 2241 will constitute an available remedy if it appears at any time that petitioner will be unable to present and obtain adjudication of a § 2255 motion prior to the time at which he would be released in the event his *Apprendi* claim were sustained on the merits.